# WILLIAM WENNER

## v.

## DAVID H. THORNTON et al.

*Filed at Ottawa November 17, 1880—Rehearing denied March Term, 1881.*

1. STATUTES—*of their passage, under the constitution of 1848.* A bill, originating in the Senate in 1865, after its passage there, was read in the House a first and second time, and referred to a committee, who reported the same

back with a recommendation that the same do not pass, and, on motion, the enacting clause was stricken out. Afterwards, the bill was passed by the House, and a message to that effect was sent to the Senate, and the act was duly signed and approved by the Governor. There was no record of the House having rescinded its action striking out the enacting clause: *Held*, that the subsequent passage of the bill, and the message to the Senate, amounted to a rescinding of the former vote striking out the enacting clause, and that the bill became a law.

2. ADMINISTRATOR WITH WILL ANNEXED—*right to have will carried into execution.* Where a testator, by will, directed that as soon as practicable, after his death, his real estate should be sold on credit, and that the money derived therefrom be added to his personal estate and equally divided among his brothers and sisters, etc., but appointed no executor: *Held*, that the administrator with the will annexed was authorized to apply to a court having equitable jurisdiction, to have a trustee appointed to make sale of the lands, though perhaps not bound to do so, and the court had jurisdiction to make the appointment on his application.

3. JURISDICTION—*can not be denied for mere error.* Where the court has jurisdiction of the subject matter of a suit, although it may appear on the face of the proceeding that the plaintiff is not entitled to bring the suit, this will not make a want of jurisdiction, and render the judgment or decree a nullity. It will only show an error in the exercise of jurisdiction, which can not be urged in a collateral proceeding.

4. SAME—*presumption in favor of.* Every presumption is indulged in to support the decree of a court of general jurisdiction. Where the judgment or decree of such a court is relied on collaterally, jurisdiction must be presumed, although it fails to appear in the record.

5. SAME—*presumption from recital in decree.* Where a decree in a suit against the unknown heirs and devisees of a deceased person, recites that it appeared to the court "that the process of summons was duly issued out of the court against the said defendants, the unknown heirs and unknown devisees of H. T., deceased, on," etc., this recital implies that the required affidavit to warrant the issue of such a summons had been filed.

6. PRACTICE—*affidavit for publication under Rev. Stat. 1845.* The Revised Statutes of 1845, relating to chancery practice, contemplates there shall be two affidavits filed, one, under section 41, to authorize a proceeding against persons by the name and description of unknown persons, and another under section 8, to justify publication of the notice to the defendants in the suit.

7. JUDICIAL SALE—*trustee selling, acting as agent for the purchaser.* Where the purchaser, at a sale under a decree of court, on the morning of the sale sent his bid with the person appointed to make the sale, which bid was a definite and fixed one, and was named and cried by the seller, and the land was struck off on such bid, it was held that there was no such agency on the part

of the seller as to afford any ground for setting aside the sale, it appearing that the party selling acted in good faith to procure the best price he could.

8. SAME—*purchase by surety of party selling.* The fact that a purchaser at a sale of land by a trustee, under appointment by a court—the trustee being also administrator, is a surety on his bond as administrator, is no ground for impeaching the sale.

9. SAME—*mistake in report.* A mistake in the report of a sale under a decree of court, of $100 more than the price of the land actually sold for, is not of such importance as to affect the sale after its confirmation.

APPEAL from the Circuit Court of LaSalle county.

This cause was before this court at the September term, 1878, when the decree which had been rendered by the circuit court of LaSalle county was reversed as to the defendant in error, William Wenner, and the cause remanded. In all other respects the decree of the circuit court was affirmed. The case is that of *Thornton et al.* v. *Houtze et al.* reported in 91 Ill. 200, where will be found a full statement of the questions then presented by the pleadings. The pleadings and record being voluminous, and all the questions in the case having been, by the former decision of this court, settled, except those which affect the appellant here, William Wenner, it is unnecessary to state here any more of the case than relates to him.

The bill in the case was one in chancery, filed by David H. Thornton and others, against William G. Houtze, administrator with the will annexed, and Sarah W. Thornton, widow of Hiram Thornton, deceased, and William Wenner and others, alleging the complainants to be heirs and devisees of Hiram Thornton, deceased, who died testate January 31, 1866, leaving a widow, Sarah W. Thornton, but no child or children, nor descendants of a child or children, nor parents or parent; that his will was probated, and William G. Houtze appointed administrator with the will annexed. A copy of the will is made part of the bill as an exhibit.

Among other things, the bill alleged that at the March term, 1866, of the county court of LaSalle county, said Wil-

liam G. Houtze exhibited his bill of complaint against the unknown heirs and unknown devisees of Hiram Thornton, deceased, praying for power to sell certain real estate therein described, according to the directions in the will of said Hiram Thornton; that said court on the 9th day of June, 1866, pursuant to the prayer of the bill, decreed that the said Houtze be appointed trustee to sell and convey the real estate in the bill described; that he afterwards sold and conveyed said real estate to William Wenner; and the bill charged that Wenner was a brother-in-law of Houtze, that he was simply a nominal purchaser,—that the purchase was made for the benefit of Houtze, and for a grossly inadequate price. The prayer of the bill is, that the sale of the land to William Wenner may be set aside, etc. Wenner answered, denying the charges respecting him. The cause was heard the first time in the circuit court on bill, answers and proofs, and the court found that the sale by Houtze to Wenner was in good faith, and decreed that the bill be dismissed as to Wenner.

The complainants brought the case to this court by writ of error, and Wenner filed a plea which was regarded as substantially a plea of release of errors. Three replications were filed to the plea, upon which issues of fact were formed,—the first issue of fact being whether Wenner had paid to Houtze $4585, the purchase money for the land sold to him by Houtze. These issues of fact were referred by this court to the circuit court of LaSalle county for trial. In that court the parties waived a trial by jury, of the issues, and submitted the issues to the court for trial. The court found the first issue of fact in favor of Wenner, and the other two in favor of the plaintiffs in error; those other two issues being whether Houtze, since the rendition of the decree, had paid to the plaintiffs in error the sum of $8,410.26 or any sum in satisfaction of the decree—and whether the plaintiffs in error, since the decree, had accepted and received from Houtze the said sum of $4585. The findings of the circuit court upon these issues were, by that court, certified back to this court,

with the evidence; and the question was then presented to this court whether the evidence sustained.the findings. We held that it did; and the result being that the plea of Wenner was not sustained—the issues upon two replications being found against him—the decree was reversed as to him and the cause remanded.

Upon the filing of the remanding order in the circuit court, the complainants amended their bill by alleging that the county court of LaSalle county did not have jurisdiction of the subject matter of the suit of Houtze for the appointment of a trustee; that William Wenner was incapacitated from becoming a purchaser at the sale by reason of his being the surety on the official bond of Houtze as administrator; and that Wenner was not present at the sale, but that Houtze acted as Wenner's agent in buying the land, and was therefore both buyer and seller, and that for each of these reasons the sale should be set aside. Wenner answered in denial, except as to his being surety, and not being present at the sale.

By order of the circuit court the two following questions were submitted to a jury for trial:

1. Did William Wenner purchase the land in controversy for the benefit of William G. Houtze?

2. Did William Wenner pay to William G. Houtze the whole of the purchase money for said land?

The jury found each of these issues in favor of Wenner. Thereupon complainants entered a motion to set aside the verdict, which motion the court overruled. Yet the court found that the county court of LaSalle county, under whose decree the land was sold, did not have jurisdiction of the persons of the heirs and devisees of Hiram Thornton, deceased, who were complainants in the present suit; that Houtze, as agent for Wenner, bid for and purchased the land for Wenner, thereby acting in the capacity of both buyer and seller; and that the sale was irregularly conducted in the interest of Wenner in a manner not calculated to obtain the

best price for the land, and decreed in favor of the complainants, setting aside the sale. Wenner appealed.

Mr. E. F. BULL, for the appellant:

The presumptions of law are all in favor of the appellant. This court will not vacate the decree under which he purchased, nor set aside the deed made to him, for slight or trivial reasons.

The act increasing the jurisdiction of the county court of LaSalle county, in 1865, was passed in the constitutional mode, and became a valid law.

As to the jurisdiction of the court of the persons of the heirs and devisees of Hiram Thornton, the county court being made a court of general jurisdiction, every presumption will be indulged to support its decree. *Nells* v. *Mason et al.* 4 Scam. 84; *Iglehart* v. *Pitcher*, 17 Ill. 308; *Rich* v. *Hathaway*, 18 id. 549; *Osgood* v. *Blackmore*, 59 id. 264; *Swearingen* v. *Gulick*, 67 id. 210; *Wallace* v. *Cox*, 71 id. 549; *Thornton* v. *Houtze*, 91 id. 199; Freeman on Judgments, § 330.

Section 8 of the Chancery Code of 1845 requires an affidavit to be filed, while section 41 requires another and entirely different one in the case of unknown heirs and devisees. The presumption is that the requisite affidavit was filed, when the files are lost; and even conceding that the record is entirely silent upon that subject, it will be presumed that the county court had evidence before it of all the jurisdictional facts to be established to authorize such court to assume jurisdiction of the case. *Swearingen* v. *Gulick*, 67 Ill. 212; Freeman on Judgments, § 132; *Sharpe* v. *Brunnings*, 35 Cal. 528; *Mitchell* v. *Menley*, 32 Texas, 460; *Hahn* v. *Kelley*, 34 Cal. 391; *Lawler's heirs* v. *White*, 27 Texas, 250; *Coit* v. *Haven*, 30 Conn. 190; *Morgan* v. *Burnett*, 18 Ohio, 535; *Wallace* v. *Cox*, 71 Ill. 548.

A bid on real estate at a judicial sale may be made without the bidder being present. *Dickerman et al.* v. *Burgess et al.* 20 Ill. 266.

Mr. CHARLES BLANCHARD, Mr. G. S. ELDRIDGE, Mr. H. T. GILBERT, Mr. C. H. BRUSH, and Mr. L. B. CROOKER, for the appellees:

The county court of LaSalle county had no jurisdiction of the subject matter of the suit, for two reasons:

1. The law conferring chancery jurisdiction, approved February 16, 1865, never constitutionally passed the legislature. Laws 1867, p. 37; Constitution 1848, art. 3, § 20; Cush. Par. Law, § 2, 101; *Bedard* v. *Hall*, 44 Ill. 91.

2. A court of equity can not assume jurisdiction for the appointment of trustees, except on the application of a party beneficially interested in the execution of the trust. *Dickey et al.* v. *Reed et al.* 78 Ill. 269; *Hall* v. *Erwin*, 2 Gilm. 176; Hill on Trustees (side page), 194; *In re Pet. of Livingston*, 54 N. Y. 569; *King* v. *Donnelly*, 5 Paige, 46; *Hawley* v. *Ross*, 7 id. 106; *In re Bedford Charity*, 2 Swanst. 578.

The county court never acquired jurisdiction of the persons of the unknown heirs and devisees of Thornton.

When a court of general jurisdiction acts upon the rights of persons residing without its territorial jurisdiction, by constructive service of process, the record must affirmatively show that all the requirements of the statute have been complied with, otherwise its judgment and decree will be a nullity. *Galpin* v. *Page*, 16 Wall. 350; *Hayward* v. *Collins*, 60 Ill. 330; *Denning* v. *Corwin*, 11 Wend. 648; *Doulin* v. *Hettinger*, 57 Ill. 348; *Fell* v. *Young*, 63 id. 106.

The sale was fraudulent because the administrator, in selling the land, acted as the agent of the purchaser. *Ex parte Bennett*, 10 Ves. 383; *DeCaters* v. *LeRay DeChaumont*, 3 Paige, 178; *Hawley* v. *Cramer*, 4 Conn. 735; *North Baltimore Building Ass.* v. *Caldwell*, 25 Md. 420; *Chambers* v. *State*, 3 Humph. 241; *McLeod* v. *McCall*, 3 Jones (N. C.), 87; 2 Perry on Trusts, § 602; *Dyer* v. *Shurtliff*, 112 Mass. 165.

The sale was fraudulent because Wenner was the surety on Houtze's official bond as administrator. *Armstrong* v. *Hus-*

*ton's heirs,* 8 Ohio, 554; *Buckler* v. *Lafferty's legatees,* 2 Robinson, 294 ; 1 White & Tudor's Leading Cases in Equity, 73; *Gardner* v. *Ogden,* 22 N. Y. 327.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is strenuously insisted, on the part of appellees, that the sale of this land by Houtze to Wenner, under the decree of the county court of LaSalle county, was not one in good faith; that Wenner did not pay the purchase money, and was but a merely nominal purchaser.

Upon a careful examination of the testimony, while we find that it discloses suspicious circumstances, we can not say that it does not authorize the finding of the jury that Wenner purchased, in good faith, for himself, and paid the purchase money. This finding was in accordance with other repeated findings in the case in the same way, and we do not find that there is sufficient reason to disturb the verdict. It would be without profit to review the testimony in detail, and we content ourselves with stating the conclusion.

Objection is made by the appellees that the county court of LaSalle county did not have jurisdiction of the subject matter of the suit in which the decree of sale was rendered, for two reasons: *first,* that the law conferring chancery jurisdiction upon the county court never constitutionally passed the legislature; and, *second,* that a court of equity can not assume jurisdiction of a suit for the appointment of a trustee, except at the application of a party beneficially interested in the execution of the trust.

The jurisdiction which the county court assumed to exercise was by virtue of " An act to extend the jurisdiction of the county court of LaSalle county," approved February 16, 1865. (Laws of 1865, p. 37.)

The bill originated in the Senate, being known as Senate Bill No. 38, which, after its passage by the Senate, was read in the House a first and second time and referred to the committee on

the judiciary, who reported the bill back with a recommendation that the same do not pass, and, on motion of the chairman of the judiciary committee, the enacting clause was stricken out. Afterwards the bill was passed by the House, which thereupon sent a message to the Senate to the effect that they had concurred in the passage of Senate Bill No. 38. The bill, after being there reported, was duly signed by the President of the Senate and Speaker of the House, and approved by the Governor, and has gone upon the statute book of this State. As there is no record of the House having rescinded its action in striking out the enacting clause, it is assumed that the House passed the bill without any enacting clause; and it is claimed that its action was in violation of the constitution and produced simply a nullity, the constitutional provision bearing upon the matter being that "the style of the laws of this State shall be: Be it enacted by the people of the State of Illinois, represented in the General Assembly."

The proper enacting clause appears to the act, and without more, we regard the subsequent passage of the bill by the House, and the message to the Senate, as amounting to a rescinding of the former vote striking out the enacting clause.

The other ground of claim of the want of jurisdiction in the county court of the subject matter, is that Houtze, the administrator with the will annexed, was not beneficially interested in the execution of the trust, and hence the court had no power at his suit to exercise the jurisdiction to appoint the trustee, and its decree was void.

We do not think that Houtze is to be regarded as a mere stranger in that proceeding.

Hiram Thornton, by his will, directed that as soon as practicable after his death, this real estate should be sold on one, two and three years' payments, in equal instalments, at six per cent interest, and the money derived therefrom be added to the personal estate and equally divided between his brothers and sisters, or their heirs. No executor having been appoint-

ed by the will, Houtze was appointed by order of the probate court, administrator with the will annexed. It was his duty to execute the will. He could not pay to the persons entitled thereto, the legacies and bequests contained in the will—to-wit, the moneys arising from the sale of the land—until this land was sold. His proceeding to have a trustee appointed to make the sale, was but the carrying out of the will of the testator that the land should be sold, and though he might not have been required by his duty as administrator with the will annexed to take this step, yet he was not so disconnected in interest with the proceeding that the decree of the county court, on his application for the appointment of a trustee to make sale of the land, should be held as made without jurisdiction of the subject matter, and a nullity. The county court, in entertaining the proceeding and making the decree, must have held that the administrator had such an interest, by virtue of his appointment, as authorized him to file the bill, and an innocent purchaser under the decree had the right to rely upon it as respects this matter, and it should be held a protection to him.

Thus much has been said upon the assumption that an interest on the part of the plaintiff in the matter in litigation, is essential to give jurisdiction of the subject matter of a suit. But we do not acquiesce in such assumption, regarding that although it may appear on the face of the proceeding that the plaintiff is not entitled to bring the suit, yet, that does not make a want of jurisdiction of the subject matter, and render a judgment for the plaintiff a nullity,—but that it would only be erroneous—that there would be but error in the exercise of jurisdiction, and not a lack of jurisdiction of the subject matter of the suit.

The next inquiry is, whether there was a want of jurisdiction in the county court of La Salle county, of the persons of the heirs and legatees of Hiram Thornton.

The proceeding there, was against them as the unknown heirs and unknown legatees of Hiram Thornton, deceased.

The ground of the claim of a want of jurisdiction of the persons, is the absence of an affidavit that the names of such persons are unknown.  The provisions of the statute regarding such proceeding are as follows:

"In all suits in chancery, and suits to obtain title to lands, in any of the courts of this State, if there be persons interested in the same whose names are unknown, it shall be lawful to make such persons parties to such suits or proceedings by the name and description of persons unknown, or unknown heirs or devisees of any deceased person, who may have been interested in the subject matter of the suit previous to his or her death; but in all such cases an affidavit shall be filed by the party desiring to make any unknown person a party, stating that the names of such persons are unknown, and process shall be issued against all parties by the name and description given as aforesaid, and notices given by publication as is required in section eight of this chapter, shall be sufficient to authorize the court to hear and determine the suit as though all parties had been sued by their proper names." Rev. Stat. 1845, p. 98, § 41.  The section eight referred to is, "Whenever any complainant shall file in the office of the clerk of the court in which his suit is pending an affidavit showing that any defendant resides or hath gone out of this State, or on due inquiry can not be found, or is concealed within this State, so that process can not be served upon him, the clerk shall cause publication to be made in some newspaper printed in his county, and if there be no newspaper published in his county, then in a newspaper published in this State, containing notice of the pendency of such suit, the names of the parties thereto, the title of the court, and the time and place of the return of summons in the case; such publication to be made for four successive weeks, the first of which shall be at least sixty days before the return day of such summons."

The publisher's certificate of publication in the case in the county court in due form appears in the record.  In the

order of the court, taking the bill *pro confesso,* it is recited: "It appearing to the court that the defendants were duly notified of the pendency of this suit, by publication of notice in the *Ottawa Free Trader,* a weekly newspaper of general circulation, printed and published in LaSalle county, more than sixty days before the first day of the present term of this court," etc.

In the final decree it is recited: "This day this cause came on to be heard upon the bill taken *pro confesso,* exhibits, and proofs taken in open court, and before the master in chancery, whose report is approved, and is as follows: 'The complainant appeared before me by his solicitor, and made proof duly: 1st, etc., * * . 5th, That the said Hiram Thornton is supposed to have left one brother, whose christian name is unknown, and who resides in the State of Oregon, if living, but that it is unknown whether the said brother is living or not, or whether there are any other heirs of the said Hiram Thornton living. But that if any such are living they are non-residents of this State.'

"And it appearing to the court that the process of summons was duly issued out of the court against the said defendants, the unknown heirs and unknown devisees of Hiram Thornton, deceased, on the 8th day of February, A. D. 1866, and was duly returned by the sheriff in conformity with law that the said defendants could not be found in his said county, and it appearing further that the said complainant filed in the office of the clerk of this court an affidavit showing that said defendants reside out of this State, and that publication was made in the *Ottawa Free Trader,* a weekly newspaper printed and published in the city of Ottawa, in said county, containing notice of the pendency of this suit, the names of the parties thereto, the title of the court, and the time and place of the return of the said summons in the case, and that such publication was made for more than four successive weeks, the first of which was more than sixty days before the return day of the said summons," etc.

In the case in the county court, the files have disappeared, so that if the required affidavit that the names of the persons were unknown had been duly filed, it could not now be produced.

By the act of the General Assembly, passed in 1865, extending the jurisdiction of the LaSalle county court, that' court was made a court of general jurisdiction, and every presumption is indulged in to support the decree of such courts. Where the record of a judgment or decree is relied on collaterally, jurisdiction must be presumed in favor of a court of general jurisdiction, although it fails to appear in the record. *Swearingen* v. *Gulick et al.* 67 Ill. 210; Freeman on Judgments, § 330.

And, even conceding the claim of appellees, that although this be the general rule, there is an exception where a court of general jurisdiction is exercising a special statutory power—such as is claimed to have been here—in which case the record must affirmatively show jurisdiction, we are inclined to hold that the record here contains a sufficient recital of jurisdiction. There is no question in the matter, except as to whether an affidavit was filed that the names of the heirs and devisees of Hiram Thornton were unknown. Had that been done, and they properly proceeded against by the description of unknown heirs and unknown devisees, instead of by their proper names, then there was jurisdiction of their persons; there being no question made, as none can be, that the publication of notice was sufficient if the heirs and devisees were rightly proceeded against as unknown heirs and devisees. It is a recital of the decree, that it appeared to the court "that the process of summons was, duly issued out of the court against the said defendants, the unknown heirs and unknown devisees of Hiram Thornton, deceased, on the 8th day of February, A. D. 1866."

Now, by the statute, to authorize the issuing of summons against parties by the name and description of unknown heirs and unknown devisees, there must have been an affi-

davit filed by the party desiring to make such unknown persons parties, stating that the names of such persons were unknown. Summons, then, could not have been duly issued against the unknown heirs and unknown devisees of Hiram Thornton, unless there had been such an affidavit filed. And when the decree recites that it appeared to the court "that the process of summons was duly issued out of the court against the said defendants, the unknown heirs and unknown devisees of Hiram Thornton, deceased," the recital implies that the required affidavit to warrant the issue of such a summons had been filed. Hence we find that the recital shows there had been such an affidavit filed.

There is evidently no force in the suggestion of appellees' counsel, that the additional recital in the decree, "and it appearing further that the said complainant filed in the office of the clerk of this court an affidavit showing that said defendants reside out of this State, and that publication was made in the *Ottawa Free Trader*," etc., shows that such affidavit of non-residence was the affidavit, and all the affidavit which was filed in the case. The statute contemplates there shall be two affidavits filed, one under section 41 to authorize the proceeding against persons by the name and description of unknown persons, and another under section eight to justify publication of notice to defendants in a suit. The affidavit mentioned in the recital is that one required to be made under section eight, and affords no implication that that was all the affidavit which was made in the case, or that a proper affidavit as required was not made under section 41.

Respecting the point, that Houtze acted as the agent of Wenner in purchasing, as well as the agent of the court in selling, the land, all there is of that is, that it appears that it being impossible for Wenner to attend the sale, he sent by Houtze on the morning of the sale a bid for the land of the sum of $4596, and Houtze struck off the land to Wenner for that sum. We think that where there was no more of an agency exercised than appears here, it is not ground for set-

ting aside a sale. The bid sent appears to have been a definite and fixed one, without any discretion in Houtze to vary it. Wenner simply gave to the trustee the bid that he was willing to make. This court gave sanction to such a transaction in *Dickerman et al.* v. *Burgess et al.* 20 Ill. 266, a case of a sheriff's sale under execution upon a bid sent to him by letter. The court say: "Nor do we mean to be understood as objecting to receiving a bid by letter—but the officer must cry the bid, and if there be no advance on it, he would be justified in selling at the bid. The debtor has a right to insist upon all the forms." Houtze here did cry the bid of Wenner, and there was no advance on it.

It is suggested there is a distinction between that case and the present, which should cause a difference of decision, the former being a case of sheriff's sale upon execution. We perceive no room for any distinction, in principle, between the two cases.

We find no sufficient ground for the objection that the sale was so conducted by Houtze as to advance Wenner's interest and enable him to obtain the property at an inadequate price. It appears from the evidence, that Houtze had once previously offered the land for sale under the decree, and the most that he could obtain therefor was a bid of $4075. Wenner made no bid at that sale. The sale was reported to the county court, and on the petition of Houtze, the trustee, the court refused to confirm the sale, the reason being that the trustee thought the land would bring more if a re-sale was ordered. Upon the re-sale being ordered by the county court, Houtze re-advertised the premises in the public newspapers and posted up a large number of hand bills throughout the county, and made otherwise extraordinary efforts to induce the attendance of bidders, and procure the best price for the land at the second sale; and the result was that he obtained nearly $600 more at the second sale than was bid at the first. The sale was opened according to the notice, at 10 o'clock in the forenoon, at the county court house in Ottawa,

and for the purpose of giving all parties that might have a desire to bid upon the land a chance to be present and do so, the sale was kept open until 5 o'clock in the afternoon of that day. It appears that there had been three or four bids made, and the trustee, in the presence and hearing of the persons who had bid at the sale, announced that he had a bid that had been handed him, and he made the bid Wenner had given him, which was some $35 in excess of any bid which he then had. This was at the hour of 4 o'clock. The sale was kept open till 5 o'clock, and there being no advance on Wenner's bid, the land was struck off to Wenner at his bid. There were 165 acres of the land, a 160-acre tract, and a 5-acre tract. There is some conflict in the evidence in regard to the value of the land, but we find no just ground of complaint on account of inadequacy of price. It is said that Houtze should have announced Wenner's bid at the commencement of the sale. That might have been the better course, but not doing so should not be ground for setting aside the sale.

It is urged that the sale was fraudulent in law because Wenner was the surety on Houtze's official bond as administrator.

We have been referred to no authority in support of such a position, nor are we aware of any, or any principle which would condemn a purchase under such circumstances at an administrator's sale.

But this was not an administrator's sale, though made by Houtze, who was administrator with the will annexed. It was a trustee's sale, made by Houtze, a trustee, by virtue of a decree of court appointing him trustee to make the sale.

Another reason urged why the sale should not be sustained is, that by Houtze's report of the sale, made to the county court, it appears that he struck off and sold to Wenner the 160-acre tract at four thousand five hundred and eighty-five dollars, and the county court approved the report and sale; while Wenner and Houtze both testify that the bid actually made upon the 160 acres was four thousand four hundred and

eighty-five dollars, and that amount is all Wenner has ever paid for the land.

It would seem from this that there was a mistake made in the report, of the amount of the sale to the county court, of one hundred dollars.

We can not regard this as a circumstance which should affect the sale.

The decree is reversed, and the cause remanded for further proceedings in conformity to this opinion.

*Decree reversed.*